**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **JOVA SOKIC et al.,** | |
| *Plaintiffs*, | **Case No. 2:25-cv-05390-JDW** |
| v. | |
| **BANK OF AMERICA N.A et al.,** | |
| *Defendants*. | |

**MEMORANDUM**

Arbitration agreements are a matter of contract. So, it stands to reason that when a defendant denies having any contractual relationship with a plaintiff, it will struggle to establish that it agreed with that plaintiff to arbitrate disputes between them. In this case, KeyBank National Association tries to overcome that hurdle by arguing that if Jovan and Reza Sokic had the contract with KeyBank that they allege, then the contract must have had an arbitration agreement. But logical inference is not the same as proof of the existence of an agreement to arbitrate, and KeyBank falls short of actual poof. It therefore cannot prevail on its motion to compel arbitration in this case.

## I.    BACKGROUND

Mr. and Mrs. Sokic allege that, in the late 1990s, they invested funds in a certificate of deposit that KeyBank National Association issued. According to the Second Amended Complaint, the Sokics requested an accounting and payment of the funds in 2025, but

KeyBank responded that it had no record of any such account or relationship. The Sokics contend that the funds remain unpaid and bring this action seeking, among other things, an accounting and recovery of those funds.

KeyBank has no record of any account that that the Sokics held. However, it contends that, *if* they had an account, then the account would have been subject to a Deposit Account Agreement that included an arbitration agreement. It has submitted exemplary versions of its Deposit Account Agreement, including versions from the mid-1990s and from 2025, each of which contains an arbitration provision. KeyBank does not, however, produce any agreement specific to the Sokics or evidence that the Sokics received or assented to any such agreement.

Before KeyBank filed its anticipated motion to compel arbitration, I permitted the parties to take limited discovery directed to developing a record on the existence of any arbitration agreement. Among other things, in response to requests for admission, KeyBank denied knowledge of any agreement with the Sokics concerning the certificate of deposit at issue. The Sokics, for their part, rely on a document that does not reference arbitration, which they contend reflects the terms of the alleged certificate of deposit.

## II.    LEGAL STANDARD

Courts evaluate motions to compel arbitration under either Rule 12(b)(6) or Rule 56 of the Federal Rules of Civil Procedure. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013). That applicable standard depends on the nature of the complaint and its supporting documents. On the one hand, "when it is apparent, based

on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" *Id.* (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp.2d 474, 482 (E.D. Pa. 2011)). In contrast, "if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue," then the parties are entitled to discovery on the issue of arbitrability and thereafter the issue is to be reevaluated under Rule 56 and/or summarily tried as appropriate. *Id.*

Under that standard, the moving party must demonstrate that no genuine issue of material fact exists "concerning the formation of the [arbitration agreement]" and the movant is entitled to judgment as a matter of law. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980); Fed. R. Civ. P. 56. Moreover, deciding a summary judgment motion requires the court to view the facts, draw all reasonable inferences and resolve all doubts in favor of the nonmoving party. *Doe v. Cnty. of Centre, Pa.*, 242 F.3d 437, 446 (3d Cir. 2001).

That is the case here. The parties dispute whether any agreement to arbitrate exists, and the record extends beyond the pleadings. I permitted targeted discovery on that issue, and the resulting record includes conflicting evidence, including KeyBank's denial

of knowledge of any agreement with the Sokics. Under *Guidotti*, those circumstances require application of the summary judgment standard.

## III.    ANALYSIS

Federal law presumptively favors the enforcement of arbitration agreements. *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 178 (3d Cir. 1999). "The question of arbitrability—whether a[n] ... agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). Because arbitration is a matter of contract, a court will not force a party to arbitrate a dispute it did not agree to submit. *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). Before compelling arbitration pursuant to the FAA, I must therefore determine (A) whether there is a valid agreement to arbitrate and (B) whether that agreement encompasses the dispute at issue. *Jaludi v. Citigroup*, 933 F.3d 246, 254 (3d Cir. 2019).

In determining whether a valid arbitration agreement exists, courts look to ordinary state law principles of contract formation. *China Minmetals Materials Imp. & Exp. Co. v. Chi Mei Corp.*, 334 F.3d 274, 290 (3d Cir. 2003). In resolving the first issue of whether there is a valid agreement to arbitrate, it is necessary for me to determine *who* bears that burden of proving the existence of an agreement to arbitrate. While it is not clear whether Pennsylvania or Ohio law governs, it doesn't matter, because both assign the burden to the party seeking to compel arbitration. *See Goldstein v. Depository Trust Co.*, 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998); *Kaminsky v. New Horizons Computer Learning Ctr. of*

4

*Cleveland*, 2016-Ohio-1468, 62 N.E.3d 1054 ¶ 14 (8th Dist. 2016). Applying Pennsylvania law, KeyBank bears "the burden of demonstrating that a valid agreement to arbitrate exists between the parties." *Goldstein*, 717 A.2d at 1067.

KeyBank has not met that burden. The record reflects a fundamental factual dispute regarding whether any agreement exists between the parties, let alone one containing an arbitration provision. KeyBank has not produced a contract between the parties containing an arbitration provision, nor has it offered evidence that the Sokics received or assented to any such provision. Instead, it relies on generic versions of its Deposit Account Agreement and asserts that such agreements are provided to customers as part of the account-opening process. But evidence of general business practices, without any evidence suggesting that it provided such an agreement to the Sokics and that the Sokics accepted the terms, does not establish that these parties entered into an agreement containing an arbitration clause. The FAA requires proof of an agreement, not inferences about what might have occurred.

KeyBank's own position in this case illustrates the problem with its motion. KeyBank continues to deny that it had a contractual relationship with the Sokics. In fact, in discovery, it refused to admit that it entered into an agreement with the Sokics concerning the certificate of deposit at issue; instead, it KeyBank denied knowledge of any such agreement. (ECF No. 34-1 at 11-13; ECF No. 40 at 1.) If KeyBank were to prevail in its argument that it did not have any contract with the Sokics, then it would necessarily have negated the possibility of an arbitration agreement. As long as it hews to the position that

it is not a party to a contract with the Sokics, then it cannot invoke what it contends is a non-existent arbitration provision to compel the Sokics to give up their right to be heard in court.

A party seeking to compel arbitration must do more than posit that a contract might have existed. The Third Circuit has emphasized that there must be an "express, unequivocal agreement" before a party may be deprived of its day in court and ordered to arbitrate. *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980). Thus, to compel arbitration, KeyBank must prove that a contract existed that included an agreement to arbitrate. KeyBank has done neither. At a minimum, the record presents a genuine dispute of material fact as to whether any agreement addressing arbitration exists, which precludes relief under Rule 56.

KeyBank's reliance on multiple versions of its Deposit Account Agreement doesn't cure the problem. The record reflects that KeyBank used numerous versions of that agreement over time, but it has not shown which version, if any, applied to the Sokics or that the Sokics received notice of or assented to any arbitration provision. That omission is particularly significant where KeyBank relies, in part, on a 2025 version of the agreement to govern a relationship that allegedly began decades earlier. Without evidence of notice and assent, those later versions cannot bind the Sokics.

KeyBank also invokes a delegation provision, arguing that questions of arbitrability should be decided by the arbitrator. But that argument presupposes the existence of a valid agreement to arbitrate. Where, as here, the formation of any agreement is in dispute,

that question is for the Court to decide. Because KeyBank has not established that an agreement exists, the delegation provision provides no basis for relief.

## IV.   CONCLUSION

KeyBank has not met its burden to show that the Sokics agreed to arbitrate their claims or that any purported agreement binds them. I will therefore deny the motion to compel arbitration. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 10, 2026